IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALEX MORADIAN, an individual,<br><br>Plaintiff,<br>v.<br><br>DEER VALLEY RESORT COMPANY, a Utah Limited Partnership,<br><br>Defendant. | **MEMORANDUM DECISION and ORDER GRANTING DEFENDANT DEER VALLEY RESORT COMPANY'S MOTION FOR SUMMARY JUDGMENT, DENYING MOTION FOR RULE 11 SANCTIONS and FINDING ALL OTHER PENDING MOTIONS MOOT**<br><br>Case No. 2:10-cv-00615-DN<br><br>District Judge David Nuffer |

This Order GRANTS Defendant Deer Valley Resort Company's Motion for Summary Judgment[1] and DENIES Deer Valley Resort Company's Motion for Rule 11 Sanctions.[2]  Because of the rulings on these two motions in this order, the court finds all other pending motions moot,[3] and the case is DISMISSED WITH PREJUDICE.

## I.      Deer Valley's Motion for Summary Judgment

### Background

This is a personal injury case arising out of an alleged skiing accident that occurred on January 22, 2010 at the Deer Valley Resort in Park City, Utah.[4]  The alleged accident involved

---

[1] Defendant Deer Valley Resort Company's Motion for Summary Judgment (Motion), docket no. 23, filed December 12, 2011.

[2] Deer Valley Resort Company's Motion for Rule 11 Sanctions (Rule 11 Motion), docket no. 62, filed April 26, 2012.

[3] Defendant's Rule 16 Motion to Modify Scheduling Order, docket no. 33, filed January 31, 2012; Motion for Partial Summary Judgment, docket no. 48, filed February 28, 2012.

[4] Complaint and Jury Demand (Complaint), docket no. 1, filed July 6, 2010 at 1, ¶ 7.

Plaintiff Alex Moradian (Moradian) and another unidentified skier.[5]  Moradian alleges

Defendant Deer Valley Resort Company (Deer Valley) employed the unidentified skier.[6]

Moradian has asserted claims against Deer Valley for negligence, negligence per se, and

negligent hiring, training, and supervision.[7]

      For the purposes of summary judgment, following facts are undisputed, or if disputed, are

viewed most favorably for Moradian as the nonmoving party.  Moradian was skiing at Deer

Valley Resort on January 22, 2012 in the early afternoon with a friend, Tuesday Nunes (Nunes).[8]

Moradian and Nunes were skiing on a beginner run that was relatively empty.[9]  While he was

skiing, an unidentified male skier (the Skier) skied up from behind Moradian and struck

Moradian's skis, causing Moradian to fall to the ground.[10]  The fall injured Moradian's knee.[11]

The Skier stopped to assist Moradian and offered to call ski patrol, but Moradian declined

assistance.[12]

      Moradian did not ask the Skier his name, but recognized the Skier was wearing a green

ski jacket that Moradian believed was a Deer Valley ski instructor's uniform.[13]  Although the

---

[5] *Id*. at 2, ¶ 13.

[6] *Id*. at 3, ¶ 24.

[7] *See generally*, Complaint.

[8] Memorandum in Opposition to Defendant's Motion for Summary Judgment (Opposition Memorandum) at 2, ¶ 1, docket no. 32, filed January 30, 2012; Moradian Dep. 48:1-6, Nov. 12, 2010, attached to Opposition Memorandum as Exhibit A, docket no. 32-1.

[9] Moradian Dep. 48:1-6; Declaration of Alex Moradian (Moradian Declaration) at 2, ¶¶ 6-7, docket no. 30, filed January 30, 2012; Opposition Memorandum at 3, ¶ 4.

[10] Moradian Dep. 45:13-18; Moradian Declaration at 2, ¶¶ 8-9; Opposition Memorandum at 2, ¶ 1.

[11] Moradian Dep. 43:2-8; Opposition Memorandum at 2, ¶ 1.

[12] Moradian Dep. 43:15-19; Opposition Memorandum at 3, ¶ 3.

[13] Moradian Dep. 43:20-23; Moradian Declaration at 2, ¶11; Opposition Memorandum at 5, ¶ 8 and at 2, ¶ 2.

Skier did not verbally identify himself as a Deer Valley ski instructor, Moradian believed the Skier was a Deer Valley ski instructor based on the clothing the Skier was wearing.[14]

After Moradian declined assistance from the Skier, he attempted to ski down the rest of the mountain but was unable to do so because of his knee injury.[15]  Moradian took off his skis and walked to the lodge.[16]  Moradian remained in Park City, Utah for an additional five days until January 27, 2010.[17]  Despite continued pain during the remainder of his stay, Moradian did not contact Deer Valley to report the accident during those five days.[18]

Moradian believed his knee injury was temporary and did not realize the extent of his injury until he visited an orthopedic physician upon his return home.[19]  The earliest appointment Moradian was able to get with the orthopedic physician was two weeks after he returned home.[20]  The physician informed Moradian that he had a torn anterior cruciate ligament that would require surgery to repair.[21]  The estimated minimum cost for the surgical treatment was $45,000.[22]  After Moradian learned the information about his injury and the cost of treatment, he called Deer Valley and reported his injury, approximately three weeks after the alleged incident.[23]

---

[14] Moradian Declaration at 2, ¶¶ 12-14; Opposition Memorandum at 4-5, ¶ 7.

[15] Moradian Declaration at 3, ¶ 21.

[16] *Id*. ¶ 22.

[17] Opposition Memorandum at 4, ¶ 6.

[18] Moradian Declaration at 3, ¶ 24.

[19] *Id*. ¶¶ 24-25.

[20] *Id*. ¶ 25.

[21] *Id*. at 4, ¶ 26.

[22] *Id*. ¶ 26.

[23] *Id*. ¶ 27.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24]  In applying this standard, the Court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[25]  However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[26] Further, a movant "that will not bear the burden of persuasion at trial need not negate the nonmovant's claim.  Such a movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[27]  Moradian has failed to produce sufficient evidence on essential elements of his claims that would allow a reasonable jury to find in his favor.  Accordingly, summary judgment in favor of Deer Valley is appropriate.

**Discussion**

As discussed below, skiers in Utah are generally barred from bringing claims against ski area operators for injuries sustained from an inherent risk of skiing.  In order to survive summary judgment, Moradian must present evidence that Deer Valley is vicariously liable for the actions of an employee who was acting within the scope of his employment at the time he struck Moradian, or that Deer Valley is directly liable for his injuries due to negligent hiring, training, or supervision.

---

[24] Fed. R. Civ. P. 56(a).

[25] *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011) (internal quotations omitted).

[26] *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

[27] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citation omitted).

**A. Ski Area Operator's Liability for Inherent Risks of Skiing**

Skiing, by its very nature, is risky.  From poor weather conditions, unpredictable terrain, and skiers of varying ability all sharing the mountain, the potential for injury is high. Recognizing that skiing is an important economic activity in Utah, the state legislature passed a law protecting ski area operators from lawsuits for injuries caused by inherent risks of skiing (the Utah Ski Statute).[28]  Specifically, the Utah Ski Statute states "as a matter of public policy, no person engaged in [the sport of skiing] shall recover from a ski operator for injuries resulting from those inherent risks."[29]

Under the Utah Ski Statute, Deer Valley is defined as a ski area operator and Moradian is defined as a skier.[30]  "'Inherent risks of skiing' means those dangers or conditions which are an integral part of the sport of recreational, competitive, or professional skiing, including but not limited to . . . collisions with other skiers."[31]  Further, "no skier may make a claim against, or recover from, any ski area operator for injury resulting from any of the inherent risks of skiing."[32]

The United States District Court for the District of Colorado confronted similar facts and a nearly identical Colorado statute in *Glover v. Vail Corp.*[33]  In *Glover*, the Colorado Ski Safety Act of 1979[34] (Colorado Ski Statute) barred suits against ski area operators for injuries caused by an inherent risk of skiing.[35]  Inherent risks of skiing were defined as "'those dangers which are an

---

[28] Utah Code Ann. § 78B-4-401 *et seq.* (West 2008).

[29] Utah Code Ann. § 78B-4-401.

[30] *See* Utah Code Ann. §§ 78B-4-402(3), (5).

[31] Utah Code Ann. § 78B-4-402(1)(f).

[32] Utah Code Ann. § 78B-4-403.

[33] *Glover v. Vail Corp.*, 955 F.Supp 105 (D. Colo. 1997).

[34] Colo. Rev. Stat. § 33-4-101 *et seq.* (West 1979).

[35] *Glover*, 955 F.Supp. at 107.

integral part of the sport of skiing, including . . . collisions with other skiers.'"[36]  In *Glover*, the

plaintiff was injured after the defendant ski area operator's employee collided with the plaintiff.[37]

At the time of the collision, the employee was skiing within the scope of his employment, and at

an excessive rate of speed through a slow-ski zone.[38]  The employee died and the plaintiff was

severely injured.[39]  The Colorado court rejected plaintiff's argument that the Colorado Ski Statute

did not preclude "actions against ski area operators where one of the skiers involved in the

collision is an employee of the operator and the operator's negligence, in part, caused the

injury."[40]  Relying on the plain meaning of the statute, the court concluded that the potential to

collide with other skier is an inherent risk of skiing and, under the Colorado Ski Statute, the

plaintiff's suit was barred.[41]

       The Supreme Court of Utah has also addressed a similar case, *Clover v. Snowbird Ski

Resort*.[42]  The Utah Supreme Court, however, has interpreted the Utah Ski Statute's bar against

claims for injuries caused by inherent risks more narrowly than the Colorado court did in

*Glover*.[43]  Specifically, in *Clover*, the court held the Utah Ski Statute "does not purport to grant

ski area operators complete immunity from all negligence claims initiated by skiers."[44]  In

*Clover*, the defendant ski area operator's employee collided with the plaintiff.[45]  The employee

was skiing quickly and decided to jump off a portion of the ski run that dropped off steeply after

---

[36] *Id.* (quoting Colo. Rev. Stat. Ann. § 33-44-103(3.5)).

[37] *Id.* at 106.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 107.

[41] *Id.* at 108.

[42] 808 P.2d 1037 (Utah 1991).

[43] *Id.* at 1045.

[44] *Id.* at 1044.

[45] *Id.* at 1039.

a crest.[46]  Due to the drop-off, it was impossible for skiers at the top of the crest to see skiers at

the bottom of the crest.[47]  As the employee became airborne, the plaintiff skied into the area

below the crest and the two skiers collided, injuring the plaintiff.[48]

      The Utah court reversed the trial court's grant of summary judgment in favor of the

defendant.  Recognizing that the dangers listed in the inherent risks of skiing section of the Utah

Ski Statute were modified by the term "integral part of the sport of skiing," the court held "ski

area operators are protected from suits to recover for injuries caused by one or more of dangers

listed in [the Utah Ski Statute] only to the extent that those dangers, under the facts of each case,

are integral aspects of the sport of skiing."[49]  In interpreting the entire Utah Ski Statute, the Court

held that the "inherent risks of skiing are those dangers . . . or hazards that cannot be eliminated

by the exercise of ordinary care on the part of the ski area operator."[50]  Further, the statute

"contemplates that the determination of whether a risk is inherent be made on a case-by-case

basis."[51]  Using this reasoning, the court in *Clover* held the Utah Ski Statute did not bar the

plaintiff's claims for negligent design and maintenance.  There was ample evidence in the record

that this particular jump was "well known to Snowbird."[52]  Moreover, in addition to signs

instructing people to go slowly on this portion of the run, Snowbird ski patrol also instructed

people not to jump of the crest.[53]  The negligent design and maintenance of ski slope was a

hazard the defendant ski area operator could have eliminated through the exercise of ordinary

---

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.* at 1044.

[50] *Id.* 1046-47.

[51] *Id.* at 1045.

[52] *Id.* at 1039.

[53] *Id.*

care and thus, was not an integral part of skiing.[54]  For this reason, the court reversed the grant of summary judgment in favor of the ski area operator.[55]

      *Clover* makes it clear Deer Valley is not entitled to absolute immunity under Utah law for all skier-skier collisions.  As discussed below, however, Moradian's suit is easily distinguishable from *Clover* and given the facts alleged here, Moradian's claims are barred by the Utah Ski Statute.

      Moradian alleges he and Nunes were skiing together down a relatively empty beginner run at the Deer Valley Resort.[56]  As they were skiing, Moradian was struck from behind by a lone skier whose identity is not known to either party.[57]  Moradian alleges he did not have the opportunity to see the Skier approaching him and, therefore, did not have the ability to avoid the collision.[58]  Nunes, however, did see the Skier approach Moradian and she was surprised Moradian and the Skier actually collided.[59]  Nunes stated "I saw the whole thing happen and it seemed like the [Skier] was out of [Moradian's] way.  And it just was like the very end of their skis hit each other.  And it was - - it just - - it seemed like the [Skier] was out of the way."[60]  As the only eye witness to the collision, Nunes also agreed that "it didn't appear that [the collision] was going to happen and [the Skier] wasn't doing anything outrageous, but it was an unfortunate,

---

[54] *Id.* at 1048.

[55] *Id.*

[56] Moradian Declaration at 1-2, ¶¶ 3, 6-7.

[57] *Id.* at 2, ¶ 8-9; Opposition Memorandum at 2, ¶ 2.

[58] Moradian Declaration at 2, ¶¶ 9-10.

[59] Nunes Dep. 51:13-14, December 6, 2010, attached to Opposition Memorandum as Exhibit B, docket no. 32-2.

[60] *Id.* 51:7-11.

fluky kind of thing that happened."[61]  Finally, Nunes also testified that the Skier "seemed to be" a good skier.[62]

Deer Valley contends, and Moradian admits, that if the skier was not a Deer Valley employee, Moradian has no cause of action against Deer Valley.[63]  Further, unlike *Clover*, the alleged skier-skier collision in the instant case was not due to negligent design or maintenance of the ski run.  As a matter of law, the Utah Ski Statute is designed to protect ski area operators from liability for these kinds of "fluky" skier-skier collisions.  This type of collision cannot be completely prevented even with the exercise of reasonable care, and is an inherent risk in the sport of skiing.

### B.  Skier's Identity as a Deer Valley Employee

As the movant, Deer Valley "bears the initial burden under [Rule] 56 to present evidence showing the absence of a genuine issue of material fact."[64]  The burden then shifts to Moradian to prove a genuine issue of a material fact exists.[65]  To carry this burden, Moradian must "present more than a scintilla of evidence.  He must set forth evidence sufficient for a reasonable jury to return a verdict in his favor."[66]  Moreover, to defeat a motion for summary judgment, the evidence "must be based on more than mere speculation, conjecture, or surmise."[67]  Moradian's only evidence supporting his allegation the Skier who struck him was a Deer Valley employee is purely based on Moradian's and Nunes's speculation, conjecture, and surmise.  This  is not enough to create a genuine issue of material fact necessary to defeat summary judgment.

---

[61] *Id.* 51:20-24.

[62] *Id*. 51:15-17.

[63] Opposition Memorandum at 13, ¶ 29.

[64] *Rice v. United States*, 166 F.3d 1088, 1091 (10th Cir. 1999).

[65] *Id*. at 1092.

[66] *Id*.

[67] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Moradian has asserted in various parts of the record that he believes the person who struck him was a Deer Valley ski instructor based on the fact the person was wearing "a Deer Valley Resort Ski School uniform."[68]  Moradian claims his "identification of the uniform as that of a Deer Valley Ski School Instructor was based on [his] previous experiences at Deer Valley Resort.  Specifically [Moradian has] skied and dined at Deer Valley Resort for more than ___ years."[69]  Moradian had observed Deer Valley ski instructors during his previous experiences at Deer Valley and Moradian claims the "skier who hit me was wearing the same uniform that I had seen on these Deer Valley Ski instructors."[70] Setting aside the inaccuracies and omissions in Moradian's description of the Deer Valley ski instructors' uniforms in his deposition,[71] this claim, at best, presents only a speculative conclusion that the Skier who struck Moradian was wearing a Deer Valley ski instructor uniform.

Deer Valley presents unrebutted facts that it sells apparel to the general public that looks like the ski instructors' uniforms.  Specifically Deer Valley "owns and operates several Deer Valley® Signature Stores that sell its Deer Valley® logo apparel to the general public.  This logo apparel includes winter ski clothing that comes in various different colors, including green, and has the same Deer Valley® logo that is used on Deer Valley Resort ski school uniforms."[72] Additionally, Deer Valley claims that every year "there are uniforms that we cannot account for that have been lost or stolen."[73]  Also as part of a "purchase agreement with Avalanche skiwear,

---

[68] Moradian Declaration at 2, ¶ 15.

[69] *Id.* ¶ 13. (Space left blank in original).

[70] *Id.*

[71] Opposition Memorandum at 6-8, ¶¶ 11-15.

[72] Affidavit of Georgia Anderson, Deer Valley Resort Company's Director of  Merchandising and Logo Licensing, at 2, ¶ 3, docket no. 24-8, attached as Exhibit H to Defendant Deer Valley Resort Company's Memorandum in Support of Motion for Summary Judgment (Supporting Memorandum), docket no. 24, filed December 12, 2011.

[73] Affidavit of Brian Bush, Deer Valley Resort Company's Equipment Issue Manager, at 2, ¶ 5, docket no. 24-12, attached as Exhibit K to Supporting Memorandum.

Avalanche re-purchases 30-40% of the Deer Valley Resort's used uniforms every year from DVRC and re-sells those uniforms to smaller customers, which these smaller customers then use as their uniforms after removing the logos."[74]  Finally, Deer Valley argues that, although expressly prohibited, "Deer Valley Resort ski instructors sometimes wear their uniforms while off-duty, not scheduled, and not working."[75]  The court cannot find any evidence the Skier was wearing a real Deer Valley ski instructor's uniform or that the Skier was a current Deer Valley employee without speculation, conjecture, or surmise.

Even if a reasonable jury could find Deer Valley employed the Skier, Moradian has still failed to provide sufficient evidence for the negligence claim he brings under the doctrine of respondeat superior.  He makes no sufficient allegations that any Deer Valley employee was acting within the scope of his employment at the time he struck Moradian.[76]  The Utah Supreme Court has provided three criteria the plaintiff must satisfy in order to show an employee was acting within the scope of his employment.[77]  First, the alleged employee's conduct must be "of the general kind the employee is employed to perform."[78]  Next, the employee's conduct must "occur within the hours of the employee's work and the ordinary spatial boundaries of the employment."[79]  Finally, the employee's conduct "must be motivated, at least in part, by the purpose of serving the employer's interest."[80]

---

[74] *Id*. at ¶ 3.

[75] Affidavit of Stephen Graff, Deer Valley Resort Company's Ski Patrol Manager, at 2, ¶ 4, docket no. 24-13, attached as Exhibit L to Supporting Memorandum.

[76] *Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1056 (Utah 1989).

[77] *Id*. at 1056-57.

[78] *Id*. at 1057.

[79] *Id*.

[80] *Id*.

Moradian alleges that, although the Skier was alone at the time of the alleged accident, the "ski instructor who struck Plaintiff was skiing on the resort during regular teaching hours in a manner consistent with the duties of a ski instructor."[81]   Moradian makes this assertion based on the deposition testimony of Stephen Graff.   Graff was asked if a ski instructor could have been skiing alone (1) while on his way to meet a class, (2) after he released his class on the mountain and was skiing down to the lodge, or (3) after he released his class at the lodge and was skiing to the ski school locker room.[82]   Graff responded affirmatively that these are three times when a Deer Valley ski instructor could have been skiing alone.[83]   However, Graff further explained that in the "investigation from John Guay[84] that that question was asked, if any of [the ski instructors] were skiing without their class at the time of the reported accident, and the answer was no."[85]

Moradian's assertion that the Skier who collided with him was wearing a Deer Valley ski instructor uniform is not enough to survive summary judgment.   It would be mere speculation to assume that the unidentified Skier who struck Moradian was a current Deer Valley employee. But even if a reasonable jury could find Deer Valley employed the skier, there is no evidence to show the Skier was acting within the scope of his employment.

## C.  Deer Valley's Alleged Negligent Hiring, Training, and Supervision

Moradian also alleges Deer Valley breached its duty of care by negligently hiring, training, and supervising the Skier.[86]   Under Utah law, even if an employer is not vicariously

---

[81] Opposition Memorandum at 15, ¶ 19.

[82] Graff Dep. 40:3-15 July 19, 2011, docket no. 32-8, attached to Opposition Memorandum as Exhibit H.

[83] *Id.*

[84] John Guay is the Director of Skier Services at Deer Valley.  *See* Graff Dep. 19:25-20:1.

[85] Graff Dep. 40:20-23.

[86] Complaint at 4-5.

liable under the doctrine of respondeat superior, the employer still may be "directly liable for its acts or omissions in hiring or supervising its employees."[87]

### 1.  Negligent Hiring

Moradian alleges Deer Valley owed a duty of care to hire ski instructors who ski in a safe and reasonable manner.  In order to state a claim for negligent hiring, Moradian must show that "[Deer Valley] had a duty to protect him from harm at the hands of its employees, a negligent breach of that duty, and the harm and damages caused by that breach."[88]  The Utah Supreme Court analyzed a negligent hiring claim in *J.H. v. West Valley City*.[89]  In *J.H.*, the minor plaintiff alleged West Valley and the West Valley Police Department negligently hired Jene Lyday as a police officer and asked Lyday to supervise a law enforcement scout program for adolescents.[90]  The program was implemented, in part, to encourage law enforcement careers for the participants and to provide a "positive program in the community for adolescents."[91]  Lyday sexually abused the plaintiff during the program and Lyday pleaded guilty to one count of attempted forcible sexual abuse.[92]  The plaintiff brought claims against West Valley and the West Valley Police Department for, *inter alia*, negligent hiring and negligent supervision of Lyday.[93]  The trial court granted summary judgment in favor of the defendants and the Utah Supreme Court affirmed the decision.[94]

---

[87] *J.H. v. West Valley City*, 840 P.2d 115, 124 (Utah 1992).

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] *Id.* at 118.

[92] *Id.* at 119.

[93] *Id.* 123-27.

[94] *Id.* at 117.

In holding for the defendants on the negligent hiring claim, the Utah Supreme Court stated the plaintiff had "produced no evidence that West Valley knew or had reason to know that Lyday had deviant characteristics that would make him a risk as a police officer or while working with youths."[95]  Further, the plaintiff had "produced no evidence that Lyday did or said anything prior to his molestation of plaintiff that would have put West Valley on notice that he had a propensity to commit such acts."[96]  Because the plaintiff failed to produce any evidence establishing a "connection between West Valley's hiring practices . . . and Lyday's actions,"[97] the negligent hiring claim failed.

In this case, Moradian has similarly failed to state a prima facie case against Deer Valley for negligent hiring.  In the Complaint, Moradian alleges simply that Deer Valley "negligently breached its duties when it hired a Deer Valley instructor who skied in an unsafe and reckless manner."[98]  Moradian has failed to produce any evidence of a nexus between Deer Valley's hiring practices and the alleged reckless skiing of the alleged employee.  There is nothing in the record that would indicate Deer Valley knew, or had reason to know, the alleged employee who collided with Moradian had a propensity to ski in an unsafe or reckless manner.  The negligent hiring claim fails as a matter of law.

## 2.  Negligent Supervision and Training

Moradian also claims Deer Valley negligently failed to supervise and train the alleged employee.  In *J.H.*, the Utah Supreme Court analyzed the negligent supervision claims and stated the plaintiff was required to show "[defendant] had a duty to supervise and direct Lyday in a

---

[95] *Id*. at 124.

[96] *Id*.

[97] *Id*.

[98] Complaint at 5, ¶ 50.

manner so as to protect persons from acts of violence . . . by him."[99]   Further, to prove such a

duty exists, the plaintiff is "required to show that such acts were foreseeable.  There is no duty to

protect persons from unforeseeable risks of harm at the hands of another."[100]   In affirming

summary judgment in favor of the defendants, the court noted "West Valley had no notice of any

problem with Lyday or with any officers.  West Valley had no reason to know that it should take

special precautions when supervising Lyday."[101]   Because West Valley had no reason to know

Lyday would behave problematically, "West Valley had no duty to take special supervisory

measures."[102]

      Citing to *Clover*, the court distinguished between known or foreseeable dangers that

would preclude summary judgment, and unknown, unforeseeable dangers.[103]   In *Clover*, there

was ample evidence presented to create a material issue of fact regarding the defendant's failure

to train and supervise its employees.  The plaintiff in *Clover* showed that the defendant "was

aware of the dangerous condition created by the ski jump and was aware that its employees often

took the jump, but did not take any measures to prohibit its employees from taking the jump or to

alleviate the danger."[104]

      In addition to the facts he alleges in the Complaint, Moradian also offers the opinion and

report of James Isham (Isham), a snow sports industry expert.[105]   Isham's opinion is that the

Skier was "skiing recklessly and without due care and as such failed to exercise reasonable care

---

[99] *Id*. at 125-26.

[100] *Id*. at 126.

[101] *Id*.

[102] *Id*.

[103] *Id*.

[104] *Id*.

[105] James Isham's Expert Report, docket no. 32-14, attached as Exhibit N to Opposition Memorandum.

while skiing on the beginner terrain in a 'Slow Skiing Zone.'"[106]  Isham also offers in the

"Observations" section of his report that "[b]ased on the testimony of Mr. Graf[f] . . . Deer

Valley failed to properly supervise its employees regarding their responsibilities to ski under

control as required by the Skiers Responsibility Code."[107]

Isham concludes the Skier was skiing recklessly and without due care.  However, Isham

fails to  provide evidence that Deer Valley was aware of any foreseeable risk that would impose

a duty on Deer Valley to protect against.  Other than relying on unspecified portions of the

deposition testimony of Graff, Isham does not explain how Deer Valley was negligent in

supervising or training the alleged employee.  Drawing all reasonable inferences in favor of

Moradian, Isham's expert report merely provides evidence the skier may have been skiing

recklessly.  The report does not, however, explain why Deer Valley was aware of a foreseeable

risk and failed to use reasonable care to avoid the risk.  Moradian fails to present any evidence

that Deer Valley negligently supervised its employees.

As further evidence of Deer Valley's failure to train its employees, Moradian offers

portions of the Deer Valley Resort Ski Instructor Guide for the 2009-2010 season (the Guide).[108]

The Guide, however, and other testimony only support the sufficiency of Deer Valley's training.

In the Guide, Deer Valley ski instructors are explicitly admonished to always "stay in control and

be able to stop or avoid other people or objects."[109]  Further, ski instructors are trained that

people "ahead of you have the right of way.  It is your responsibility to avoid them."[110]  Finally,

in addition to the Guide, Deer Valley ski instructors "should be aware of and use the *Skier's*

---

[106] *Id*. at 3.

[107] *Id*. at 4.

[108] Docket no. 32-13, attached as Exhibit M to Opposition Memorandum.

[109] *Id*. at 2.

[110] *Id*.

*Responsibility Code.*"[111]   Moradian also offers deposition testimony of Graff where Graff explains Deer Valley has adopted the National Ski Area responsibility code.  Graff states this code is "printed in the employee manual.  It's my understanding it's in every departmental manual as well."[112]   When asked if employees are trained on the code, Graff responded affirmatively.[113]  Further, Graff describes the various disciplinary actions Deer Valley would take if it found an employee violated the code.[114]   None of this evidence supports a claim of negligent supervision or training.  Moradian has failed to produce evidence that supports a negligent training or supervision claim.  Deer Valley's Summary Judgment Motion is therefore granted.

## II.      Deer Valley's Motion for Rule 11 Sanctions

Deer Valley has also moved for Rule 11 sanctions against Moradian's counsel.[115]  On February 28, 2012, Moradian's attorney filed a Motion for Partial Summary Judgment.[116] Moradian sought summary judgment on his negligence claim on the basis that "there are no disputed issues of material fact and Plaintiff has established the four elements for liability under a claim for negligence."[117]  Moradian specifically argued "the ski instructor owed Plaintiff a duty of care to ski in a controlled manner so as to avoid striking Plaintiff.  Second, the ski instructor breached this duty of care when he skied in such a manner that he struck Plaintiff."[118]  Third, Moradian argued that he "would not have been struck . . . but for the ski instructor's breach of

---

[111] *Id.*

[112] Graff Dep. 63:4-6.

[113] *Id.* 63:7-8.

[114] *Id.* 63:12-24.

[115] Rule 11 Motion.

[116] Motion for Partial Summary Judgment (Moradian's Summary Judgment Motion), docket no. 48, filed February 28, 2012.

[117] *Id.* at 1.

[118] *Id.* at 8.

this duty of care.  Fourth, Plaintiff sustained injuries . . . as a result of the collision."[119]  Based on

these allegedly "undisputed" facts, Moradian asserted he is entitled to summary judgment on his

negligence claim.  Deer Valley responded to Moradian's Summary Judgment Motion and also

filed a separate Rule 11 Motion.[120]

       Under Rule 11, an attorney who presents a pleading, written motion, or other paper to the

court certifies that

> (1) it is not being presented for any improper purpose, such as to
> harass, cause unnecessary delay, or needlessly increase the cost
> of litigation;
> (2) the claims, defenses, and other legal contentions are warranted
> by existing law or by a nonfrivolous argument for extending,
> modifying, or reversing existing law or for establishing new
> law;
> (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support
> after a reasonable opportunity for further investigation or
> discovery; and
> (4) the denials of factual contentions are warranted on the evidence
> or, if specifically so identified, are reasonably based on belief
> or lack of information.[121]

       Thus, "Rule 11 mandates sanctions against attorneys . . . when pleadings, motions, or

other signed papers in the district court are not well grounded in fact, are not warranted by

existing law, or good faith argument for extension, or are filed for an improper purpose."[122]  Rule

11 sanctions, however, "are not intended to chill an attorney's enthusiasm or creativity in

---

[119] *Id.*

[120] Deer Valley Resort Company's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, docket no. 64, filed May 3, 2012; Rule 11 Motion.

[121] Fed. R. Civ. P. 11(b).

[122] *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n. of Kan.*, 891 F.2d 1473, 1484 (10th Cir. 1989).

pursuing factual or legal theories."[123]  Therefore, "in determining if sanctions are appropriate, any doubts must be resolved in favor of the party signing the pleading."[124]

Deer Valley argues that Moradian's counsel violated Rule 11 when filing Moradian's Summary Judgment Motion.[125]  Specifically, Deer Valley argues Moradian's Summary Judgment Motion "has absolutely no chance of success and, as such, it is frivolous, requiring Rule 11 sanctions."[126]  In support of its motion, Deer Valley first contends Moradian's Summary Judgment Motion was frivolously filed because Moradian has "absolutely no chance of success."[127]  Moradian "apparently thinks that all he needs to do to prevail is essentially allege that a nameless, unidentified Deer Valley Resort ski instructor caused him to fall."[128]  Second, Deer Valley argues Moradian's expert testimony offers nothing to "circumvent the speculative nature of plaintiff's claims" and that the expert's testimony "need not be accepted at all even if plaintiff somehow made it beyond the dispositive motion stage."[129]  Finally, Deer Valley argues some of Moradian's counsel's other cases "have been subject to Rule 12(b)(6) Motions to Dismiss and, in some instances, Motions for Sanctions."[130]  Deer Valley concludes that "[s]omething must be done to curtail this practice and send a clear message that filing frivolous cases and/or Motions is sanctionable under Rule 11 and simply not acceptable."[131]

---

[123] *Edwards v. Hare*, 682 F.Supp. 1528, 1535 (D. Utah 1988) (quoting Fed. R. Civ. P. 11 advisory committee's note).

[124] *Id.*

[125] Defendant Deer Valley Resort Company's Memorandum in Support of Motion for Rule 11 Sanctions (Rule 11 Supporting Memorandum), at 2, docket no. 63, filed April 26, 2012.

[126] *Id.*

[127] *Id.* at 4.

[128] *Id.*

[129] *Id.* at 7.

[130] *Id.* at 8.

[131] *Id.*

In opposing the Rule 11 Motion, Moradian's counsel argues conclusorily that "Deer Valley's motion for sanctions must be denied because it has no basis in fact or law.  In fact, despite the seriousness of its allegation, Deer Valley has failed to clearly state the basis for its motion."[132]  First, Moradian asserts Deer Valley's argument that Moradian's expert testimony need not be accepted is not supported by law.[133]  Specifically, "the only authorities cited by Deer Valley are inapplicable Utah state court decisions and unpublished district court decisions limited to the issue of whether a jury can disregard expert testimony based on credibility determinations."[134]  Second, Moradian's counsel argues Moradian's credibility and the inconsistencies in his testimony should not be evaluated when deciding Moradian's Summary Judgment Motion.[135]  Third, Moradian's counsel argues there are "objectively reasonable arguments [that] exist for why the Declarations [of Moradian and Nunes] are not shams and should be considered by the court."[136]  Moradian next asserts Deer Valley's arguments that his claims are based on speculation and conjecture mischaracterize the record.[137]  Specifically that Moradian "clearly identified the skier who struck [him] as wearing [as ski instructor's] uniform," that ski instructors utilized the run in question, and that "Deer Valley's own policy prohibits employees from skiing in uniform while off duty."[138]

---

[132] Memorandum in Opposition to Motion for Sanctions (Rule 11 Opposing Memorandum) at 3, docket no. 71, filed June 12, 2012.

[133] *Id*. at 4.

[134] *Id*.

[135] *Id*. at 5.

[136] *Id*. at 7.

[137] *Id*. at 9.

[138] *Id*.

Moradian next asserts that the few disputed issues of fact Deer Valley identified in the Rule 11 Motion do not support sanctions.[139]  Specifically, Moradian claims that "Deer Valley fails to cite to the record or provide any explanation for why it believes that these [alleged facts] clearly create disputed issues of fact.  In fact, most of these assertions rely on a mischaracterization of the record."[140]  Next, Moradian contends that even "if it ultimately fails, [Moradian's Summary Judgment Motion] did not needless increase expenses because it has narrowed the issues for trial.  Under the newly revised Federal Rules of Civil Procedure, even a motion for summary judgment that is denied serves a useful purpose."[141]  Finally, Moradian's counsel argues that Deer Valley's attacks on counsel's record are "inappropriate and irrelevant in determining whether Plaintiff's motion for summary judgment is frivolous," and that "Deer Valley's attempt to besmirch [Moradian's counsel is] based upon material omissions and misrepresentations."[142]

From the record, it does not appear that Moradian's Summary Judgment Motion was presented to the court for any improper purpose or to increase the cost of litigation.  Rather, as Moradian contends, the motion was presented to narrow the issues to be presented at trial.  Second, Moradian's counsel has sufficiently expressed that the arguments he presented in support of Moradian's Summary Judgment Motion are grounded in existing law and are not frivolous arguments for extending, modifying, or reversing existing law.  Finally, Moradian's counsel's factual contentions have evidentiary support and are based on his reasonable belief.  Although the court ultimately disagrees that the facts Moradian alleges are sufficient to support his claims

---

[139] *Id.* at 11.

[140] *Id.*

[141] *Id.* at 15.

[142] *Id.* at 16.

against Deer Valley, any doubts in determining if sanctions are appropriate must be resolved in favor of Moradian.  A losing motion for summary judgment does not require sanctions liability. Accordingly, Deer Valley's Rule 11 Motion is denied.

## ORDER

For the reasons stated herein,

IT IS HEREBY ORDERED that Defendant Deer Valley Resort Company's Motion for Summary Judgment[143] is GRANTED and the case is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant Deer Valley Resort Company's Motion for Rule 11 Sanctions[144] is DENIED.  All other motions[145] currently pending are DENIED as moot.


Dated August 16, 2012.


BY THE COURT:

_____
David Nuffer
United States District Judge

---

[143] Docket no. 23.

[144] Docket no. 62.

[145] Defendant's Rule 16 Motion to Modify Scheduling Order, docket no. 33, filed January 31, 2012; Motion for Partial Summary Judgment, docket no. 48, filed February 28, 2012.